```
COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS (213113)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@csgrr.com
     – and –
DARREN J. ROBBINS (168593)
DAVID C. WALTON (167268)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@csgrr.com
davew@csgrr.com

Attorneys for Plaintiff

[Additional counsel appear on signature page.]
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL OFFUTT, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>     vs.<br><br>VERIFONE HOLDINGS INC., DOUGLAS G. BERGERON and BARRY ZWARENSTEIN,<br><br>              Defendants. | No. CV 07 6241<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS<br><br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by VeriFone Holdings, Inc. ("VeriFone" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of purchasers of the common stock of VeriFone between March 1, 2007 to November 30, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act [15 U.S.C. §78aa].

4. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6. Plaintiff Daniel Offutt, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of VeriFone at artificially inflated prices during the Class Period and has been damaged thereby.

7. Defendant VeriFone engages in the design, marketing, and service of transaction automation systems that enable electronic payments between consumers, merchants, and financial institutions.

8. (a) Defendant Douglas G. Bergeron ("Bergeron") was, at all relevant times, Chairman and Chief Executive Officer of VeriFone.

(b) Defendant Barry Zwarenstein ("Zwarenstein") was, at all relevant times, VeriFone's Executive Vice President and Chief Financial Officer.

9. Defendants Bergeron and Zwarenstein are collectively referred to herein as the "Individual Defendants."

10. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and/or Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

11. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of VeriFone, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

12. As officers and controlling persons of a publicly held company whose common stock was, and is, registered with the SEC pursuant to the Securities Act as of 1933, and was traded on the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with VeriFone, each of the Individual Defendants had access to the adverse undisclosed information about VeriFone's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about VeriFone and its business issued or adopted by the Company materially false and misleading.

14. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

15. Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of VeriFone common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding VeriFone's business, operations, management and the intrinsic value of VeriFone common stock; and (ii) caused plaintiff and other members of the Class to purchase VeriFone common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

16. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired VeriFone common stock during the Class Period and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

17. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, VeriFone common shares were actively traded on the NYSE. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by VeriFone or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

18. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

19. Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

20. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of VeriFone; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

21. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

22. Defendant VeriFone engages in the design, marketing, and service of transaction automation systems that enable electronic payments between consumers, merchants, and financial institutions.

23. The Class Period commences on March 1, 2007. On that date, VeriFone issued a press release announcing its financial results for the first quarter of 2007, the period ending January 31, 2007. The Company reported earnings per share of $0.37. Defendant Bergeron commented on the results stating in pertinent part as follows:

> "VeriFone has successfully completed its first quarter since our transformative acquisition of Lipman. I am delighted both with the progress that we have made in integrating Lipman's business into VeriFone and in generating another very strong quarter financially and operationally"....
>
> "VeriFone's newly configured worldwide sales force is serving customers through a fully integrated distribution channel and supply chain. At the same time we have been reducing inventory and generating considerable operating cash flow"....

> "Based on these results, we are increasing our second quarter internal expectations for net income, as adjusted, per share to be in the range of $0.36 to $0.37. We remain very confident of our prospects for fiscal 2007."

24. On May 29, 2007, VeriFone issued a press release announcing its financial results for the second quarter of 2007, the period ending April 30, 2007. The Company reported earnings per share of $0.39. Defendant Bergeron commented on the results stating in pertinent part as follows:

> "I am pleased to report on another very successful quarter for VeriFone as we once again achieved record profitability . . . . During the quarter, our record margins drove our robust EPS growth, and also resulted in strong cash flow . . . . We were especially pleased with our continuing success of our wireless products and were delighted with the resurgence of our North American business which grew sequentially 8 percent from the previous quarter."

> "Based on these results and the $4 million of revenue which has been recognized in the third quarter, we are increasing our third quarter internal expectations for net revenue to $225-$227 million and increasing our guidance for net income, as adjusted, per share to a range of $0.39-$0.40. We remain confident of our prospects for the remainder of fiscal 2007."

25. On June 19, 2007, VeriFone issued a press release announcing that it had priced $275 million principal amount of 1.375% Senior Convertible Notes due 2012.

26. On September 6, 2007, VeriFone issued a press release announcing its financial results for the third quarter of 2007, the period ending July 31, 2007. For the quarter, the Company reported earnings per share of $0.42. Defendant Bergeron commented on the results stating in pertinent part as follows:

> "I am extremely pleased to report on another outstanding quarter as we once again achieved exceptional financial results . . . . During the quarter, we achieved record revenues and record gross and operating margins, all which led to strong EPS growth . . . . Our North American business continued to surge, growing 9% sequentially. Our compelling portfolio of wireless solutions and our strength in emerging markets were also significant factors driving our success this quarter."

> "We are increasing our internal expectations for the fourth quarter and now expect to repeat these record third quarter results. Our guidance for the fourth quarter, therefore, is for net revenue of $231-$233 million and net income, as adjusted, per share of $0.41-$0.42. As a result, we are also increasing our full year fiscal year 2007 expectations for net income, as adjusted per share to $1.59 to $1.60 per share. As well, given the out-performance in profitability that we have consistently enjoyed since the closing of the Lipman acquisition last November, we are now taking this opportunity to update our long term financial model. We are reaffirming our revenue growth rate projection in the 10%-15% range and we are increasing our margin expectations as reflected in the table below."

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS                                     - 6 -

27. The statements referenced above in ¶¶23-24 and 26 were each materially false and misleading when issued because they misrepresented and failed to disclose the following material adverse facts:

   (a) the Company was materially overstating its financial results by failing to properly value its inventory and it was materially understating its cost of net revenues;

   (b) the Company was not following its publicly stated accounting policies; and

   (c) as a result of the foregoing, the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP") and therefore were materially false and misleading.

28. Then, on December 3, 2007, prior to the opening of the market, VeriFone issued a press release announcing that "it has concluded that its unaudited interim consolidated financial statements for the three months ended January 31, 2007, the three and six months ended April 30, 2007 and the three and nine months ended July 31, 2007 should no longer be relied upon, principally due to errors in accounting related to the valuation of in-transit inventory and allocation of manufacturing and distribution overhead to inventory, each of which affects VeriFone's reported costs of net revenues." The Company further reported that it had materially overstated inventories and materially understated cost of net revenues for interim periods in 2007. The press release detailed the amounts of the overstatement stating in pertinent part as follows:

> Based on its review to date, management currently anticipates that the restatement will result in reductions to previously reported inventories of approximately $7.7 million, $16.5 million and $30.2 million as of January 31, 2007, April 30, 2007 and July 31, 2007, respectively, and reductions to previously reported pre tax income of approximately $8.9 million, $7.0 million and $13.8 million for the three month periods ended January 31, 2007, April 30, 2007 and July 31, 2007, respectively. VeriFone is currently evaluating the anticipated effect of the restatement on after-tax income for those periods.

29. In response to this announcement, the price of VeriFone stock plummeted, falling from $48.03 per share on November 30, 2007 to as low as $23.67 per share in intra-day trading on December 3, 2007, on extremely heavy trading volume.

30. The market for VeriFone's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to

1  disclose, VeriFone's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired VeriFone common stock relying upon the integrity of the market price of VeriFone's common stock and market information relating to VeriFone, and have been damaged thereby.

31. During the Class Period, defendants materially misled the investing public, thereby inflating the price of VeriFone's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

32. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about VeriFone's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of VeriFone and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market the inflation in the price of VeriFone stock was removed and the price of VeriFone stock declined dramatically causing loss to plaintiff and the other members of the Class.

### ADDITIONAL SCIENTER ALLEGATIONS

33. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in

1  the issuance or dissemination of such statements or documents as primary violations of the federal
2  securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of
3  information reflecting the true facts regarding VeriFone, their control over, and/or receipt and/or
4  modification of VeriFone's allegedly materially misleading misstatements and/or their associations
5  with the Company which made them privy to confidential proprietary information concerning
6  VeriFone, participated in the fraudulent scheme alleged herein.

7       34.    Defendants' scienter is further evidenced by their massive insider selling during the
8  Class Period. During the Class Period, the Individual Defendants and other VeriFone insiders
9  collectively sold hundreds of millions of dollars of their personally held VeriFone stock to the
10 unsuspecting public. The insider trading of the Individual Defendants is shown below:

| DEFENDANT | SHARES SOLD | PROCEEDS |
|---|---|---|
| BERGERON | 1,203,222 | $47,493,206 |
| ZWARENSTEIN | 118,585 | $4,637,814 |
| TOTAL | 1,321,807 | $52,131,020 |

**APPLICABILITY OF PRESUMPTION OF RELIANCE:
FRAUD ON THE MARKET DOCTRINE**

     35.    At all relevant times, the market for VeriFone's common stock was an efficient
market for the following reasons, among others:

     (a)    VeriFone's stock met the requirements for listing, and was listed and actively
traded on the NYSE, a highly efficient and automated market;

     (b)    As a regulated issuer, VeriFone filed periodic public reports with the SEC and
the NYSE;

     (c)    VeriFone regularly communicated with public investors via established
market communication mechanisms, including through regular disseminations of press releases on
the national circuits of major newswire services and through other wide-ranging public disclosures,
such as communications with the financial press and other similar reporting services; and

     (d)    VeriFone was followed by several securities analysts employed by major
brokerage firms who wrote reports which were distributed to the sales force and certain customers of

their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

36. As a result of the foregoing, the market for VeriFone's common stock promptly digested current information regarding VeriFone from all publicly available sources and reflected such information in VeriFone's stock price. Under these circumstances, all purchasers of VeriFone's common stock during the Class Period suffered similar injury through their purchase of VeriFone's common stock at artificially inflated prices and a presumption of reliance applies.

## LOSS CAUSATION/ECONOMIC LOSS

37. During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated VeriFone's stock price and operated as a fraud or deceit on Class Period purchasers of VeriFone stock by misrepresenting the Company's financial results and business. Defendants achieved this façade of success, growth and strong future business prospects by blatantly misrepresenting earnings. Over three consecutive quarters, Q1 2007-Q3 2007, defendants improperly inflated VeriFone's reported results. Later, however, when defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, VeriFone stock fell precipitously as the prior artificial inflation came out of VeriFone's stock price. As a result of their purchases of VeriFone stock during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

38. On December 3, 2007, defendants were forced to publicly disclose that: (i) the Company had overstated inventories and understated cost of net revenues during certain periods of 2007; (ii) VeriFone's financial reports were erroneous and could no longer be relied upon; and (iii) the Company had overstated its earnings for the first three quarters of fiscal 2007. These public revelations indicated that there had been prior falsification of VeriFone's financial results due to defendants' accounting manipulations. As investors and the market became aware that VeriFone's prior financial results had been falsified, the prior artificial inflation came out of VeriFone's stock price, damaging investors.

39. As a direct result of defendants' admissions and the public revelations regarding the truth about VeriFone's previously reported financial results and its actual business prospects going forward, VeriFone's stock price plummeted 50%, falling from $48.03 per share on November 30, 2007 to as low as $23.67 per share in intra-day trading on December 3, 2007, on extremely heavy trading volume. This drop removed the inflation from VeriFone's stock price, causing real economic loss to investors who had purchased the stock during the Class Period.

40. The 50% decline in VeriFone's stock price at the end of the Class Period was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of VeriFone's stock price declines negate any inference that the loss suffered by plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the defendants' fraudulent conduct. During the same period in which VeriFone's stock price fell 50% as a result of defendants' fraud being revealed, the Standard & Poor's 500 securities index was flat. The economic loss, *i.e.*, damages, suffered by plaintiff and other members of the Class was a direct result of defendants' fraudulent scheme to artificially inflate VeriFone's stock price and the subsequent significant decline in the value of VeriFone's stock when defendants' prior misrepresentations and other fraudulent conduct was revealed.

## NO SAFE HARBOR

41. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was

false, and/or the forward-looking statement was authorized and/or approved by an executive officer of VeriFone who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. During the Class Period, defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

45. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for VeriFone common stock. Plaintiff and the Class would not have purchased VeriFone common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

46. As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of VeriFone common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act All Defendants

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of VeriFone within the meaning of §20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of VeriFone, and their ownership of VeriFone stock, the Individual Defendants had the power and authority to cause VeriFone to engage in the wrongful conduct complained of herein. VeriFone controlled the Individual Defendants and all of its employees. By reason of such conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: December 11, 2007

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS

_____
SHAWN A. WILLIAMS

100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS                              - 13 -

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Verifone.doc

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

*Shaun A. Williams/CPS*
ATTORNEY OF RECORD FOR PLAINTIFF
DANIEL OFFUTT

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

DANIEL OFFUTT ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

Acquisitions:

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 11/8/07 | 1000 | $45.35 |
| | | |
| | | |

Sales:

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| 12/3/07 | 1000 | $24.28 |
| | | |
| | | |

5. Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

VERIFONE

D. OFFUTT

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _10_ day of _DEC_, 2007.

                                              */s/ Daniel Offutt*
                                              DANIEL OFFUTT